Marc L. Mukasey (*Pro Hac Vice*)
Torrey K. Young (*Pro Hac Vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
E-Mail: MMukasey@seyfarth.com;
TKYoung@seyfarth.com

Brian R. Michael (CA SBN 240560)
MORRISON FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: (213) 892-5200
Facsimile: (213) 892-5454
E-Mail: BMichael@mofo.com

Attorneys for JOSEPH NEAL SANBERG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH NEAL SANBERG,<br><br>Defendant. | Case No. 2:25-CR-00200(a)-SVW<br><br>**DEFENDANT'S OBJECTIONS TO REVISED PRESENTENCE INVESTIGATION REPORT**<br><br>Hearing Date: April 27, 2026<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom of the Hon. Stephen V. Wilson |

JOSEPH NEAL SANBERG, through Counsel and pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure, hereby files his objections to the Revised Presentence Investigation Report ("PSR") prepared by the United States Probation Office.  *See* ECF No. 79 (PSR).

Dated: April 24, 2026                    Respectfully submitted,


 /s/ Marc L. Mukasey
MARC L. MUKASEY
TORREY K. YOUNG
Seyfarth Shaw LLP
620 8th Avenue, 32nd Floor
New York, NY 10018

and

 /s/ Brian R. Michael
BRIAN R. MICHAEL
Morrison Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017

Attorneys for Defendant
JOSEPH NEAL SANBERG

## I.   INTRODUCTION

Probation disclosed its draft PSR on January 15, 2026, finding that Mr. Sanberg met the criteria for the two-level zero-point offender adjustment pursuant to U.S.S.G. § 4C1.1.  ECF No. 61 at ¶¶ 81-86.  Notwithstanding a 14-day deadline to object to that finding under Rule 32(f) of the Federal Rules of Criminal Procedure, the government did not object to the zero-point offender adjustment until nearly three months later in its sentencing submission.  *See* ECF No. 76 at 9-11.  Consistent with its broader effort to pile everything onto Joe – including culpability for purported conduct well beyond the scope of the plea agreement – the government's objection relied on three impact statements from Aspiration investors who the government has not connected to Joe's conduct, as described in the Factual Basis to his plea agreement.

Probation filed its final PSR one week later, adopting the government's position wholesale while making no mention of the defense's position, which makes clear that the impact statements relied upon by the government are not sufficient to establish that Joe personally caused substantial financial hardship.  *See* ECF No. 80 (Addendum to PSR) at 1-2; ECF No. 77 at 24-26.  Because Probation's removal of the zero-point offender adjustment on the basis that Joe personally caused substantial financial hardship is inconsistent with the factual record and cannot be squared with Ninth Circuit reasoning, the defense objects.

## II.   ARGUMENT

The PSR accepted, without analysis, that the three investors who submitted the impact statements are victims of Joe's conduct, as set forth in the Factual Basis.  But not *every* investor in Aspiration who ultimately lost money due to the company's bankruptcy can fairly be designated as a victim in this case.  Based on this flawed premise, the PSR then found substantial financial hardship because "the victims indicate that investing with Sanberg has caused them hardship to the point of having to *reconsider* their retirement plans."  PSR at ¶ 87 (emphasis added).  That is wholly insufficient.  To establish substantial financial hardship, the government must prove that: (1) the investors are

victims of Joe's crimes (not merely investors who lost money in a bankrupt company); and (2) that the claimed financial hardship meets the standard established in the Ninth Circuit. The government has not made this evidentiary showing.

The defense incorporates by reference the discussion of the zero-point offender adjustment in its sentencing memorandum. *See* ECF No. 77 at 24-26 (discussing *United States v. George*, 949 F.3d 1181, 1184 (9th Cir. 2020)). As shown in that submission, the government has failed to prove the second prong of the analysis—namely that the authors of the impact statements suffered a substantial financial hardship under the Ninth Circuit standard established in *George*.

What Probation and the government have entirely failed to consider, however, is the first prong of the analysis—whether the authors of the impact statements can fairly be characterized as victims of Joe Sanberg. Instead, they simply assume that any Aspiration investor who lost money in the bankruptcy and submitted an impact statement must be Joe's victim. That is wrong.

In *United States v. Lonich*, the Ninth Circuit established critical guardrails to overreaching attempts by the government to hold an individual personally responsible for the downfall of an entire company. 23 F.4th 881, 888 (9th Cir. 2022), *overruled by United States v. Lucas*, 101 F.4th 1158 (9th Cir. 2024) (rejecting clear and convincing evidence standard). In *Lonich*, the government sought to enhance three defendants' loss calculations by holding them responsible for the failure of Silicon Valley Bank ("SVB") and associated losses. *Id.* One of the defendants was CEO of the bank. The Ninth Circuit's analysis of the government's loss theory identified precisely the connective proof that is missing here:

> The principal issue we consider concerning sentencing is the district court's adoption of several enhancements that dramatically increased defendants' recommended Guidelines sentencing ranges. *These enhancements were premised on a critical factual finding: that defendants caused SVB to fail, making defendants responsible for associated losses* … We hold that defendants' sentences must be vacated. The jury did not determine whether

2

defendants caused SVB's failure. And *the government at sentencing did not sufficiently prove that point*.

*Id.* at 907 (emphases added).

In *Lonich*, the government actually made an attempt at sentencing to show that the defendants' conduct actually caused SVB's collapse.  The government submitted law enforcement reports summarizing witness interviews that supposedly "bolster[ed] the theory that defendants were responsible for SVB's failure."  *Id.* at 909.  The Ninth Circuit reversed the defendants' sentences, emphasizing that the law required the government to establish a causal link between the defendants' conduct and any loss enhancement that it sought.  *Id.* at 916.  The Ninth Circuit found that the district court "made no independent findings about the cause of the bank's collapse" and that "neither the PSRs nor the additional materials the government now cites sufficiently show that defendants were responsible for SVB failing . . . ."  *Id.* at 917.  The same holds true here.

In the absence of any showing that Joe's conduct caused Aspiration to fail, the government cannot simply rely on impact statements from Aspiration investors who lost money due to the bankruptcy and assume they are Joe's victims.  *United States v. Holmes* is instructive on this point.  In *Holmes*, the district court rejected an attempt by Probation and the government to hold Elizabeth Holmes, the founder of Theranos, responsible for the investment losses of all Series C shareholders in the company after its collapse.  2023 WL 149108, at *3-4 (N.D. Cal. Jan. 10, 2023).  The PSR calculated the total loss caused by Holmes' wire fraud schemes at $730 million across 29 Series C investors.  *Id*. at *3. Noting that the Ninth Circuit permitted "a district court to impose sentencing enhancements only for losses that 'resulted from' the defendant's fraud," the court upheld a defense objection to the PSR's loss calculation.  *Id.*  Instead of $730 million of loss for 29 investors, the court applied a loss enhancement based only on the ten investors "who indicated they had relied on or reviewed the Theranos misrepresentations propagated by Defendant's conspiratorial conduct, instead of counting every Series C investor as the PSR does."  *Id.*  Joe's PSR suffers from the same analytical flaw.

Here, the government has made no attempt to show that Joe Sanberg's conduct caused Aspiration's bankruptcy, as required in *Lonich* and *Holmes*. There is no mention of the bankruptcy in the plea agreement, and the government has introduced zero documentary, testimonial, or other evidence that proves this causal connection or would otherwise support such a finding. Under these circumstances, and incorporating the defense's prior arguments in its sentencing submission, ECF No. 77 at 24-26, the Court should reject Probation's reliance on the government's impact statements and reinstate the two-level zero-point offender adjustment from the draft PSR.

With respect to each of the impact statements relied on in the PSR to deny the zero-point offender adjustment, the government has failed to connect the author's investment to Joe's offense conduct:

- E.K. and M.K. (ECF No. 76-2) appear to have invested all but $5,000 prior to Joe's misconduct relating to letters of intent ("LOI"). There is no basis to conclude that their $5,000 investment in 2024 caused them substantial financial hardship. Nor does the impact statement identify a single misrepresentation from Joe that they relied on in their investment decision.

- K.G. (ECF No. 76-3) does not identify the timing of her investment and whether it was within the timeframe relevant to Joe's misconduct. The only alleged misrepresentations identified in her impact statement are not referenced in the Factual Basis of the plea agreement, and the government has not otherwise shown them to be fraudulent.

- Y.B. (ECF No. 76-4) invested prior to Joe's LOI conduct described in the Factual Basis, and her impact statement does not identify a single misrepresentation from Joe that she relied on in her investment decision. She states that she was invited to invest in Aspiration by her daughter and that "Joe seemed like a nice man."

- Although the government does not cite the impact statement from M.D. (ECF No. 76-5) in support of its substantial hardship argument, Probation nonetheless included his statement in the PSR. Yet Probation ignored M.D.'s character letter in support of Joe that asks for no incarceration, and overlooked that 100% of M.D.'s investments took place between 2014 and 2019, before *any* offense conduct described in the Factual Basis.

4

DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

## III.    CONCLUSION

For the foregoing reasons, the defense objects to Probation's removal of the two-level zero-point offender adjustment in the final PSR.  *See* ECF No. 79 at ¶ 87.

Dated: April 24, 2026                               Respectfully submitted,

 /s/ Marc L. Mukasey
MARC L. MUKASEY
TORREY K. YOUNG
Seyfarth Shaw LLP
620 8th Avenue, 32nd Floor
New York, NY 10018

and

 /s/ Brian R. Michael
BRIAN R. MICHAEL
Morrison Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017

Attorneys for Defendant
JOSEPH NEAL SANBERG

5